UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OZ HOLDING LCC,

                Plaintiff,

- against -

ELM COURT REALTY LLC,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

09 Civ. 7427 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Oz Holding LCC ("Oz") alleges that Defendant Elm Court Realty LLC ("Elm Court") breached a written purchase and sale agreement for real property (the "Agreement") by failing to disclose information about the functionality of the property's septic system and its compliance with local health codes. The Complaint pleads causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and negligent misrepresentation related to Defendant's alleged omissions of material information concerning the property sold to Plaintiff, and promissory estoppel. (Cmplt. ¶ 1) Plaintiff seeks recovery of $500,000 in earnest money. (Cmplt. ¶¶ 11-12, 20-21)

        Defendant has moved to dismiss, arguing that Oz was fully aware of the need to replace the septic system, was aware that it was a "failed system" under local law, was aware that "local authorities had provided notice to Elm Court of possible action with respect to the septic system," and "had every opportunity to investigate issues related to the septic system during its due diligence period." (Def Br. 1) (emphasis in original). For the reasons stated below, Defendant's motion to dismiss will be denied.

## BACKGROUND

The parties entered into the Agreement on July 20, 2007. Under the Agreement, Defendant agreed to sell the property located at 310 Old Stockbridge Road, Lenox, Massachusetts (the "Property") to Plaintiff for $11,250,000. (Cmplt. ¶¶ 8-9, Ex. A). The Property was used as a bed and breakfast and as a reception facility for large groups. (Id. ¶ 30) The Agreement specified that Plaintiff would deposit $150,000 in earnest money with Defendant's Escrow Agent by July 27, 2007, and would deposit an additional $350,000 in earnest money by August 20, 2007, if Plaintiff had not terminated the Agreement by that date. (Id. ¶¶10-11) The $500,000 in earnest money was to be applied to the total purchase price. (Id. ¶ 12)

Plaintiff made the required earnest money payments. (Cmplt. ¶¶ 19, 37) Under the default provision of the Agreement, Plaintiff would forfeit its earnest money in the event that it refused to close the transaction as scheduled in the Agreement. (Id. ¶ 18) The Agreement set a closing date of September 19, 2007, but that date was later extended by written amendment to October 19, 2007. (Id. ¶¶ 13-14)

The Agreement contains a number of provisions relating to the Property's septic system. For example, the Agreement recites that the Property is "not connected to a municipal sewer system and, to the best of Seller's knowledge, is served by a septic system containing a so called 'tight tank' which is located within the boundaries of the Premises." (Id. ¶ 15, Ex. A ¶ 5(e)) The Agreement further provides that

> Buyer acknowledges that due to its containment of a tight tank, the Septic System is a "failed system" as defined by Title 5 of the State Environmental Code (310 CMR 15.301) and Buyer has taken the same into account in its decision to enter this Agreement. Buyer shall have the right to engage a licensed Septic Inspector to perform a system inspection during the Inspection Period.

(Cmplt., Ex. A ¶ 5(e))  Title 5 states that the owner or operator of a "failed system"

> shall upgrade the system within two years of discovery unless (a) a shorter period of time is set by the local Approving Authority or the Department [of Health] based upon the existence of an imminent health hazard; or (b) the continued use of the system is permitted by the local Approving Authority in accordance with the provisions of an enforceable schedule for upgrade. . . .

310 CMR § 15.305(1).

The Defendant also makes a number of representations and warranties in the Agreement, including the following:

> Except as otherwise set forth in this Agreement, including without limitation notice with respect to the Septic System, Seller hereby represents and warrants that Seller has not received written notice with respect to any actions, suits, claims, demands or proceedings of any kind or nature, legal or equitable, pending against Seller of the Premises or any portion thereof which would materially affect the Premises or create a lien on the Premises; and that to the best of Seller's actual knowledge, that there are no liens, leases, conveyances, easements, reservations, restrictions, covenants or encumbrances other than matters of public record affecting the Improvements. . . .  (Id. ¶ 16, Ex. A ¶ 26(b))

> To the best of Seller's knowledge, there are no actions, suits or proceedings pending or threatened against the Improvements or Seller which, if determined adversely to Seller, would adversely affect its ability to perform its obligations under this Agreement. . . . (Id. ¶17, Ex. A ¶ 26(e))

> There are no pending, or to the Seller's knowledge, threatened, judicial, administrative, condemnation or eminent domain proceedings relating to the improvements, and Seller is not operating under or subject to, and Seller is not in default with respect to, any order, writ, injunction or decree that relates to Seller or the Improvements or any part thereof. . . . (Id. ¶ 18, Ex. A ¶ 26(g))

Prior to execution of the Agreement, Defendant did not disclose to Plaintiff that it had received – in December 2005 and April 2006 – two letters from the

3

local Health Department complaining about the Property's septic system.[1]  (Id. ¶ 20)  The letters reveal that in April 2003 the Health Department approved a "temporary tight tank" for use at the Property and that use of this "tank was approved for use for two years." The December 2005 letter directs Defendant to "complete the installation of [a new] system by June 1, 2006."  (Id. ¶ 20, Ex. B)  The April 2006 letter reminds Defendant of its obligation to install a new system by June 1, 2006, and threatens legal action in the event of non-compliance:  "Failure to comply with this order may result in action filed against you in Southern Berkshire District Court."  (Id.)

Plaintiff alleges that because of Defendant's failure to disclose these letters Plaintiff was not on notice that "an enforcement action was threatened by the Tri-Town Health Department" and that "Plaintiff could be subject to immediate enforcement in a criminal proceeding upon taking title to the Locus."  (Cmplt. ¶¶ 23-27)  The Complaint further alleges that Defendant promised the Town's Board of Selectmen in 2003 that a septic upgrade would be implemented, and that the Board granted Defendant a special permit to use the Property as a bed and breakfast establishment based on that representation.  (Id. ¶¶ 28-29)  The Board of Health subsequently "ordered Defendant to discontinue use of the main house, and any other areas of the Locus, as a bed and breakfast."  (Id. ¶ 30)  Indeed, Plaintiff alleges that "the premises could not be operated or occupied at all because the temporary approval or permission for the tank ha[d] long since expired."  (Cmplt. ¶¶ 23-27)

On October 12, 2007 – a week before the scheduled closing – Plaintiff requested a ninety-day extension of the closing date to permit it to "understand the

---

[1]  The record does not reveal how these letters first came to Plaintiff's attention.

ramifications of Defendant's failure or refusal to disclose the said material information, and to allow Plaintiff to address the issues with its prospective financing source." (Id. ¶ 35) Defendant refused the requested extension (id. ¶ 36) and rejected Plaintiff's demands that it return the $500,000 in earnest money. (Id. ¶¶ 37-38)

## DISCUSSION

Plaintiff argues, inter alia, that Defendant's failure to disclose the December 2005 and April 2006 Health Department letters breached the representations set forth in the Agreement and constitutes actionable fraud. (Pltf. Br. 6) Defendant argues that it properly disclosed to Plaintiff that the septic system was a "failed system" that would have to be replaced, and that "the letters would not have provided information that was not already disclosed." (Def. Br. 6)

### I.   LEGAL STANDARD

"To survive a motion to dismiss," a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In making this determination, a Court must be mindful of two corollary rules. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950 (citing Twombly, 550 U.S. at 556). The Supreme Court has stated that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citation omitted).

"When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993). The following documents are properly before the Court because they were incorporated by reference in the Complaint: (1) the Agreement dated July 20, 2007 (Cmplt., Ex. A); and (2) the letters from the Tri-Town Health Department dated December 12, 2005 and April 11, 2006 (Cmplt., Ex. B).

## II.     PLAINTIFF'S CONTRACT CLAIMS ARE ADEQUATELY PLED

Defendant argues that Oz's contract and promissory estoppel claims fail because Elm Court disclosed all of the information upon which Oz bases its claim. Because the Agreement provides that it "is to be governed by the laws of the Commonwealth of Massachusetts" (Id., Ex. A ¶ 19), the parties have agreed that the adequacy of the Complaint is to be measured against the substantive law of that state.

"To establish a prima facie case of breach of contract, the plaintiffs must show that (i) there is a contract; (ii) the plaintiffs performed their duties under the contract; (iii) [defendant] breached the contract; and (iv) the plaintiffs suffered damages as a result of [defendant's] breach." Mass. Med. Soc'y v. Group Ins. Comm'n, 2009 Mass. Super. LEXIS 100, at * 27 (Mass. Super. Ct. Mar. 30, 2009) (citing Restatement (Second) of Contracts, § 1; Singarella v. Boston, 342 Mass. 385, 387, 173 N.E.2d 290

6

(1961)). Moreover, "'[i]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing.' This covenant 'exists so that the objectives of the contract may be realized. . . . The scope of the covenant is only as broad as the contract that governs the particular relationship." Id. (citing Druker v. Roland Wm. Jutras Assocs., Inc., 370 Mass. 383, 385, 348 N.E.2d 763 (1976); York v. Zurich Scudder Invs., Inc., 66 Mass. App. Ct. 610, 615 n.2, 849 N.E.2d 892 (2006)).

"To prove a claim of promissory estoppel under Massachusetts law,[2] 'a plaintiff must allege that (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise.'" Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 203 (1st Cir. 2004) (citing Carroll v. Xerox Corp., 294 F.3d 231, 242 (1st Cir. 2002)).

---

[2] "Massachusetts eschews the label 'promissory estoppel.'" Neuhoff, 370 F.3d at 203 (citing Loranger Constr. Corp. v. E. F. Hauserman Co., 376 Mass. 757, 384 N.E.2d 176, 179 (Mass. 1979) (holding that "when a promise is enforceable in whole or in part by virtue of reliance, it is a 'contract,' and it is enforceable pursuant to a 'traditional contract theory' antedating the modern doctrine of consideration"). Under Massachusetts law, "'an action based on reliance is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration.'" Id. (quoting R.I. Hosp. Trust Nat'l Bank v. Varadian, 419 Mass. 841, 647 N.E.2d 1174, 1179 (1995)); see also Lombardo v. Mauriello, 2002 Mass. Super. LEXIS 399, n.6 (Mass. Super. Ct. Sept. 26, 2002) ("Promissory estoppel is not an independent cause of action. It is an alternative method of establishing that there was consideration sufficient to create a contract.") (citing Loranger Constr. Corp., 376 Mass. at 760).

Here, while the parties do not separately address Plaintiff's contract and promissory estoppel claims, it is apparent that they are tied to, inter alia, the representations and warranties the Defendant made in the Agreement. In those provisions, Defendant represented that it had "not received written notice with respect to any actions, suits, claims, demands or proceedings of any kind of nature, legal or equitable, pending against Seller of the Premises or any portion thereof which would materially affect the Premises. . . ." (Cmplt. ¶ 16, Ex. A ¶ 26(b)) Defendant further represented that "[t]here are no pending, or to the Seller's knowledge, threatened, judicial, administrative, condemnation or eminent domain proceedings relating to the improvements, and Seller is not operating under or subject to, and Seller is not in default with respect to, any order, writ, injunction or decree that relates to Seller or the Improvements or any part thereof. . . ." (Id. ¶ 18, Ex. A ¶ 26(g))

Accepting the factual allegations in the Complaint as true, Iqbal, 129 S. Ct. at 1950, it is apparent that the December 2005 and April 2006 letters could be read to put Defendant on notice that it is in violation of a Health Department order and that the Health Department has threatened judicial action in the event of continued non-compliance. The letters make clear that the Health Department had approved the Property's "temporary tight tank" for only two years, and that this period had expired in April 2005. The December 2005 letter directs Defendant to "complete the installation of [a new] system by June 1, 2006" (Cmplt. ¶ 20, Ex. B), and the April 2006 letter reminds Defendant of that obligation and threatens legal action in the event of non-compliance: "Failure to comply with this order may result in action filed against you in Southern Berkshire District Court." (Id.)

8

Defendant's argument that its disclosure – recited in the Agreement – that the Property's septic system constitutes a "failed system" under Massachusetts law (Cmplt., Ex. A ¶ 5(e)) defeats as a matter of law any contractual claim is not persuasive. The December 2005 and April 2006 letters do far more than disclose that the Property contains a "failed system."  They indicate that the Health Department had ordered years earlier that the system be replaced, had set a deadline for the new installation, and had threatened legal action in the event that the June 1, 2006 deadline was not complied with. The "failed system" disclosure does not address any of this information, all of which implicates representations and warranties Defendant made in the Agreement, including the representations that (1) Defendant had "not received written notice with respect to any actions, suits, claims, demands or proceedings of any kind or nature, legal or equitable, pending against Seller of the Premises or any portion thereof which would materially affect the Premises. . . ."  (Cmplt. ¶ 16, Ex. A ¶ 26(b)), and (2) "[t]here are no pending, or to the Seller's knowledge, threatened, judicial, administrative, condemnation or eminent domain proceedings relating to the improvements, and Seller is not operating under or subject to, and Seller is not in default with respect to, any order, writ, injunction or decree that relates to Seller or the Improvements or any part thereof. . . ."  (Id. ¶ 18, Ex. A ¶ 26(g))

For all of these reasons, Defendant has not demonstrated that it is entitled to judgment as a matter of law on Plaintiff's contract and promissory estoppel claims.

## III.  PLAINTIFF'S FRAUD AND MISREPRESENTATION CLAIMS ARE ADEQUATELY PLED

Defendant argues that Oz's claims for fraud and negligent misrepresentation must be dismissed because, "simply put, Elm Court did not make any

9

misrepresentation." (Def. Br. 7) Defendant has not demonstrated that it is entitled to dismissal of these claims as a matter of law.

Under Massachusetts law, plaintiffs pursuing a fraud claim "must establish that the defendants made a false representation of material fact, with knowledge of its falsity, for the purpose of inducing the plaintiffs to act on this representation, that the plaintiffs reasonably relied on the representation as true, and that they acted upon it to their damage." Masingill v. EMC Corp., 449 Mass. 532, 540, 870 N.E.2d 81 (Mass. 2007). A negligent misrepresentation claim is made out where a party shows that "the defendant '(1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information.'" Braunstein v. McCabe, 571 F.3d 108, 126 (1st Cir. Mass. 2009) (citing Gossels v. Fleet Nat'l Bank, 453 Mass. 366, 902 N.E.2d 370, 371-72 (Mass. 2009)).

Massachusetts law recognizes that partial disclosure and "half-truths" may constitute actionable misrepresentations:

> Although there may be "no duty imposed upon one party to a transaction to speak for the information of the other . . . <u>if he does speak with reference to a given point of information, voluntarily or at the other's request, he is bound to speak honestly and to divulge all the material facts bearing upon the point that lie within his knowledge.</u> Fragmentary information may be as misleading . . . as active misrepresentation, and half-truths may be as actionable as whole lies. . . ." See HARPER & JAMES, TORTS, § 7.14. See also Restatement: Torts, § 529; WILLISTON, CONTRACTS (2d ed.) §§ 1497-1499. The existence of substantially this principle was assumed in the Swinton case, 311 Mass. 677, 678. . . . [and] Massachusetts decisions have applied this principle. See Kidney v. Stoddard, 7 Met. 252, 254-255 (a father represented that his son was

>entitled to credit but failed to disclose that the son was a minor; statement treated as a fraudulent representation); Burns v. Dockray, 156 Mass. 135, 137 (assertion that title was good [see Lyman v. Romboli, 293 Mass. 373, 374] but omitting to refer to the possible insanity of one whose incompetence might cloud title); Van Houten v. Morse, 162 Mass. 414, 417-419 (partial disclosure by a woman to her fiancé about a prior divorce). See also International Trust Co. v. Myers, 241 Mass. 509, 512-513; White Tower Management Corp. v. Taglino, 302 Mass. 453, 454-455; Boston Five Cents Sav. Bank v. Brooks, 309 Mass. 52, 55-56 ("Deception need not be direct . . . . Declarations and conduct calculated to mislead . . . which . . . do mislead one . . . acting reasonably are enough to constitute fraud").

Kannavos v. Annino, 356 Mass. 42, 48 (Mass. 1969) (emphasis added); see also AT&T Corp. v. Stockard, 2006 U.S. Dist. LEXIS 98447, at *28 (D. Mass. Apr. 24, 2006) (citing Lawson v. Affirmative Equities Co., L.P., 341 F. Supp. 2d 51, 66 (D. Mass. 2004) (quoting First Circuit Pattern Jury Instructions: Criminal § 4.12 (1998))) ("Falsity includes 'matters that were either known to be untrue when made or made with reckless indifference to their truth,' and incorporates 'actual, direct false statements as well as half-truths and the knowing concealment of facts.'").

       A party's mere failure to disclose information during contract formation is not, of course, actionable absent a relationship that gives rise to a special duty to disclose. See Walsh v. Lalit Dodani, 2005 Mass. Super. LEXIS 31, at *12 n.1 (citing Solomon v. Birger, 477 N.E.2d 137 (Mass. 1985)) (distinguishing "the obligation to speak honestly when making a statement that relates directly to the subject of a business transaction such as the sale of a home . . . from the rule upon which the defendant relies that a seller is not liable for failing to disclose all latent defects of which they are aware and that may diminish the value of the property" by explaining that only "where there is no voluntary disclosure by the seller on which the buyer relies, nor an inquiry by the buyer, [is it the case that] the seller has no duty to act"); Greenery Rehabilitation Group v. Antaramian,

11

36 Mass. App. Ct. 73, 77 (1994).  "What we face here, however, are allegations of partial or incomplete statements that may by their incompleteness be actionable[,] Restatement of Torts (Second), §§ 529, 551(2)(b)[, and t]here is much case law in Massachusetts supporting the proposition that a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party."  V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411, 415 (1st Cir.1985) (citing Maxwell v. Ratcliffe, 356 Mass. 560, 562-63, 254 N.E.2d 250 (1969) ("Because the question of the dryness of the cellar had been raised expressly, there was special obligation on the brokers to avoid half truths and to make disclosure at least of any facts known to them or with respect to which they had been put on notice."); Nei v. Boston Survey Consultants, Inc., 388 Mass. 320, 322, 446 N.E.2d 681 (1983) ("There is no suggestion that the defendants made a partial disclosure or stated a half truth which may be tantamount, under certain conditions, to a falsehood if there is no further expatiation."))

    Here, Defendant disclosed to Plaintiff that the Property's septic system was a "failed system" within the meaning of Title 5 of the State Environmental Code, 310 CMR 15.301.  The Code defines "Failed Subsurface Sewage Disposal System or Failed System" as "[a] system which fails to protect public health and safety or the environment as set forth at 310 CMR 15.303 or 15.304."  310 CMR 15.002.  Section 15.303 explains that "if one or more of [a following list of conditions] exist[s] as documented by inspection by an approved System Inspector, or determined by the local Approving Authority or the Department [of Health], the system is failing to protect public health and safety and the environment and shall be upgraded."  310 CMR 15.303(1).  Section 15.303

also states that "[a]ny system shall be upgraded upon the order of the Department [of Health] or the local Approving Authority if either determines that a specific circumstance exists by which any system threatens public health, safety, welfare or the environment. . . ." 310 CMR 15.303(2).

Defendant's disclosure that the Property's septic system was a "failed system" put Plaintiff on notice that the system was required by law to be replaced, but informed it of little else. See 310 CMR §§ 15.303(1); 15.305(1). The time period for replacement is not self-evident. Massachusetts requires that such a system be upgraded within two years of discovery unless a shorter period of time is set by the local Approving Authority or the Department of Health, but the State also permits the "continued use" of such a system where the local Approving Authority has set "an enforceable schedule for upgrade. . . ." 310 CMR § 15.305(1). That, of course, is what appears to have happened here. The Health Department decreed in April 2003 that the septic system be replaced within two years, and then set an explicit deadline (June 1, 2006) for its replacement, on pain of legal action. Accepting the allegations of the Complaint as true, Defendant chose not to disclose this information. What Plaintiff reasonably believed concerning the status of the septic system will be revealed through discovery, but the record at this stage does not foreclose Plaintiff's fraud and misrepresentation claims related to Defendant's failure to disclose the Health Department's communications regarding the Property's septic system.

The facts and holding in Kannavos v. Annino, 356 Mass. 42, 48 (1969), are instructive in this regard. The defendant seller in Kannovos advertised the property at issue as investment property operated as multi-family units, when the property was zoned

13

only for single family use. "The vendors knew that the vendees were planning to continue to use the buildings for apartments, and yet the vendors still failed to disclose the zoning and building violations" resulting from the use of the property as multi-family dwellings. Id. at 712. In that case, as here, "the parties [] were dealing at arm's length, the vendees were in no way prevented from acquiring the [concealed] information, and the vendors stood in no fiduciary relationship to the vendees." Id. at 711. The court held, however, that this case was distinct from cases in which a vendor was "wholly silent" – providing no basis for fraud – because there "was something more here than the 'bare nondisclosure' of the seller in [those other cases]." Id. The court went on to hold that the "vendors' conduct entitled the vendees to rescind." Id. at 713.

Similarly here – accepting the allegations of the Complaint as true – Defendant offered for sale a Property that it knew – because of the Code violations – could not be lawfully operated. Defendant chose to disclose partial information concerning the septic system – that is, that it was a "failed system" – but chose not to disclose the fact that it had violated an order requiring replacement of the system by June 1, 2006, and had been threatened with legal action. At the very least, Kannavos and its progeny demonstrate that discovery is appropriate to explore whether – as Defendant argues – the Health Department letters would have added nothing meaningful to Plaintiff's understanding of the adequacy of the septic system for current and future use.[3] See Catalina Yachts v. Old Colony Bank & Trust Co., 497 F. Supp. 1227, 1236 (D. Mass.

---

[3] Defendant cites no case suggesting that dismissal is appropriate at this stage of the litigation. All of the decisions cited by Defendant were issued at summary judgment or after trial. (See Def. Br. 7-9)

1980) ("Whether the two communications between [the parties], when considered together with the surrounding circumstances, were misleading, were intended by the Bank to be so, and were reasonably relied upon by Catalina are questions as to which genuine fact issues exist and they are, therefore, for the trier of fact.").

Defendant errs in arguing that the Complaint should be dismissed because Plaintiff could have and should have discovered – prior to executing the Agreement – the Health Department's actions concerning the Property's septic system. A buyer is not required to plead due diligence where it has alleged that a seller actively misrepresented facts material to the decision to purchase property. "Th[e] duty to avoid misrepresentations is so strong that the deceived party is not charged with failing to discover the truth." V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411, 415 (1st Cir. 1985) (citing Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 446, 333 N.E.2d 421 (1975) ("If the seller's representations are such as to induce the buyer not to undertake an independent examination of the pertinent facts, lulling him into placing confidence in the seller's assurances, his failure to ascertain the truth through investigation does not preclude recovery.")); see also Yorke v. Taylor, 332 Mass. 368, 374, 124 N.E.2d 912, 916 (1955) ("The recipient in a business transaction of a fraudulent misrepresentation of fact is justified in relying on its truth, although he might have ascertained the falsity of the representation had he made an investigation."). "A plaintiff is not barred from recovering merely because he did not use due diligence in ascertaining the truth from records." Fleet Nat'l Bank, 2000 Mass. Super. LEXIS 702, at *34 (citing Kannavos, 247

N.E.2d at 711-12); Zimmerman v. Kent, 31 Mass.App.Ct. 72, 78, 575 N.E.2d 70, 76 (1991)).[4]

Whether or not Plaintiff's fraud and negligent misrepresentation claims will survive a summary judgment motion after discovery is not the issue. What is presently before this Court is a partial disclosure that the system is a "failed system" combined with representations and warranties that (1) Defendant has received no legal notices of any claim against the Property "which would materially affect [it]"; (2) Defendant is not aware of any threatened judicial action against the Property; and (3) Defendant is not in default with respect to "any order, writ, injunction or decree that relates to the Seller or the Improvements or any part thereof. . . ."  (Cmplt. ¶¶ 16, 18, Ex. A ¶¶ 26(b), 26(g)).  Given the Health Department letters Defendant failed to disclose to Plaintiff, this Court cannot rule as a matter of law at this stage of the litigation that Plaintiff cannot prevail on its fraud and negligent misrepresentation claims.

---

[4] The cases Defendant cites (Def. Br. 9) are not on point because in each case the court explicitly found that the defendant has not made a misleading partial disclosure under the Kannavos standard. See, e.g., Greenery Rehabilitation Group v. Antaramian, 36 Mass. App. Ct. 73, 77 (Mass. App. Ct. 1994) (citing Maxwell v. Ratcliffe, 356 Mass. 560, 562-563, 254 N.E.2d 250 (1969)) ("This was not a case of a partial disclosure that is deceptive unless the whole story is told.  For purposes of argument only, we may assume a case where a seller knows of a weakness in the subject of the sale and does not notify the buyer of it."); Pizza Zone, Inc. v. Darn Realty, Inc., 23 Mass. L. Rep. 672 (Mass. Super. Ct. 2008) ("[E]ven if, arguendo, Darn's failure to alert Pizza Zone of this knowledge rises to the level of a 'bare nondisclosure,' such an act falls short of fraud 'where there is no duty to speak.'  Pizza Zone admits that Darn never impeded it from researching the relevant requirements.  This is not, as Pizza Zone suggests, an instance of a 'partial disclosure' that is 'deceptive unless the whole story is told.'") (citing Nei., 388 Mass. at 322; Windram Manufacturing Co. v. Boston Blacking Co., 239 Mass. 123, 126, 131 N.E. 454 (1921)).

### IV. THE AGREEMENT'S DEFAULT PROVISION DOES NOT BAR PLAINTIFF'S RECOVERY

Defendant argues that the Agreement's liquidated damages provision (Cmplt., Ex. A ¶ 18) – which is predicated on the Buyer's failure to close as scheduled – bars any claim for rescission and return of the earnest money.  Nothing in the Agreement suggests, however, that this provision applies where the seller has breached the Agreement prior to the scheduled closing date.  Paragraph 18 of the Agreement reads as follows:

> **DEFAULT**.  If the purchase of the Premises is not consummated in accordance with the terms and conditions of this Agreement on account of breach by Buyer, the Earnest Money then held by the Escrow Agent and all interest earned thereon shall be paid to Seller as full liquidated damages for Buyer's default.

(Cmplt., Ex. A ¶ 18)  Paragraph 18, however, also states: "In the event <u>Seller fails to comply with or perform any of the conditions, covenants, or agreements contained herein, then, Buyer shall be entitled to pursue all of its remedies in law or in equity</u>." (<u>Id.</u>) (emphasis added)  This is precisely the situation Oz alleges.  Whether Defendant complied with the terms of the Agreement cannot be answered as a matter of law at this stage of the litigation.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss the Complaint is DENIED. The Clerk of the Court is directed to terminate the motion. (Docket No. 12)

Dated: New York, New York
      July 8, 2010

SO ORDERED.

Paul G. Gardephe
United States District Judge